**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Radix Law PLC, | No. CV-19-05248-PHX-JAT |
| Appellant, | **ORDER** |
| v. | |
| Brian Mullen, | |
| Appellee. | |

Pending before the Court is an appeal from the bankruptcy court's September 16, 2019 Order (Doc. 15-1 at 4–5). The Court now rules on the appeal.

**I.  BACKGROUND**

My Vintage Venue, LLC ("Debtor"), filed for Chapter 7 bankruptcy on December 28, 2017. (Doc. 15 at 6). Prior to that, Radix Law PLC ("Appellant")—formerly the Frutkin Law Group—and Emily Hughes—the sole member of Debtor—signed an engagement letter for legal services on April 5, 2016 ("Agreement"). (Doc. 15-1 at 48–49). The Agreement stated that "[t]he scope of representation is to protect [Emily Hughes'] interest in Lavender and Old Lace, including negotiating the commercial lease." (*Id.*).

After Debtor filed bankruptcy, Appellant filed a proof of claim in Debtor's bankruptcy proceeding. (Doc. 15 at 6–7; Doc. 15-1 at 47). It asserted that Appellant had a secured claim for amounts owed for legal services rendered on behalf of Debtor. (*See* Doc. 15 at 6–7). The bankruptcy court, after a hearing on March 13, 2019, determined

that the Agreement was between Appellant and Emily Hughes, in her personal capacity—not between Appellant and Debtor. (*Id.* at 7–8; *see* Doc. 15-1 at 4–5, 117–20). Therefore, the bankruptcy court held that Appellant has no claim against the bankruptcy estate. (Doc. 15 at 7–8; Doc. 15-1 at 4–5). Appellant appeals that determination.

## II. STANDARD OF REVIEW

A bankruptcy court's findings of fact will be upheld unless clearly erroneous, while its conclusions of law are subject to de novo review. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). The bankruptcy court commits clear error where "the reviewing court is left with the 'definite and firm conviction that a mistake has been made." *In re Adamson Apparel, Inc.*, 785 F.3d 1285, 1291 (9th Cir. 2015) (citation omitted) (concluding that bankruptcy court did not clearly err in making a finding of fact because that finding was supported by evidence in the record).

## III. ANALYSIS

Appellant argues that the bankruptcy court erred in two ways. Appellant asserts that the bankruptcy court erred by failing to reform the Agreement to reflect that the Agreement was between Appellant and Debtor. (Doc. 15 at 10–13). It also claims that the bankruptcy court erroneously determined that Appellant did not comply with Arizona Rule of Professional Responsibility 1.5(b) ("Ethical Rule 1.5") in its communication with Debtor. (*Id.* at 8–10); *see* Ariz. Sup. Ct. R. 42, ER 1.5(b). The Court addresses each argument in turn.

### a. Reformation

Appellant argues that the bankruptcy court "focused on the concept of 'parol evidence' to try to decipher the intent of the parties at the time of contract rather than the correct legal principal [sic]: equitable reformation." (Doc. 15 at 11). "Reformation is the remedy designed to correct a written instrument which fails to express the terms agreed upon by the parties . . . ." *Isaak v. Mass. Indem. Life Ins.*, 623 P.2d 11, 14 (Ariz. 1981). A court can reform a contract where it does not express the terms of the agreement reached by the parties as a result of a mutual mistake. *See Diaz-Amador v. Wells Fargo Home*

*Mortgs.*, 856 F. Supp. 2d 1074, 1082–83 (D. Ariz. 2012). "A party seeking reformation of a written agreement must 'show that a definite [i]ntention on which the minds of the parties had met pre-existed the written instrument and that the mistake occurred in its execution.'" *SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd.*, 265 P.3d 1070, 1078 ¶ 18 (Ariz. Ct. App. 2011) (alteration in original) (citation omitted). In other words, a party seeking to reform a contract must show that the parties mutually assented to the terms it seeks in its claim for reformation. 7 Joseph M. Perillo, *Corbin on Contracts* § 28.45 (rev. ed. 2002) [hereinafter Corbin].

"[E]xperience teaches that mistakes are the exception and not the rule . . . ." *See* Restatement (Second) of Contracts § 155 cmt. c (Am. Law Inst. 1981).[1] Thus, the remedy of reformation should be granted sparingly. *See id.* Indeed, courts should exercise "care . . . when the asserted mistake relates to a writing, because the law of contracts, as is indicated by the parol evidence rule and the Statute of Frauds, attaches great weight to the written expression of an agreement." *Id.* Because reformation is a form of equitable relief, the court has discretion in deciding whether to invoke it. *Id.* cmt. d; *see also Nelson v. Rice*, 12 P.3d 238, 241 ¶ 7 (Ariz. Ct. App. 2000) (citations omitted) (noting that courts will not reform a contract where "the party seeking relief bears the risk" of mistake).

The bankruptcy court did not err in concluding that Appellant was not entitled to reformation. Appellant contends that the bankruptcy court erred because it did not reform the Agreement and replace Emily Hughes with Debtor as the party bound by the Agreement. Whether Appellant and Debtor agreed to a contract—i.e., whether there was

---

[1] This Court looks to the Restatement (Second) of Contracts because, "[i]n the absence of contrary authority[,] Arizona courts follow the Restatement of the Law." *Bank of Am. v. J. & S. Auto Repairs*, 694 P.2d 246, 248 (Ariz. 1985); *see In re Kirkland*, 915 F.2d 1236, 1238–39 (9th Cir. 1990) ("When interpreting state law, a federal court is bound by the decision of the highest state court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." (citations omitted)). It appears, based on the parties' briefs and the Court's own review of the case law, that the Arizona Supreme Court has not determined whether a contract can be reformed to substitute one party for another, the issue Appellant raises here.

mutual assent between Appellant and Debtor before the written contract was executed—is a question of fact. *Tabler v. Indus. Comm'n of Ariz.*, 47 P.3d 1156, 1159 ¶¶ 10–13 (Ariz. Ct. App. 2002); *see also Turley v. Beus*, No. 1 CA-CV 15-0107, 2017 WL 410976, at *5 ¶ 20 (Ariz. Ct. App. Jan. 31, 2017). The Court will only reverse a bankruptcy court's determination on a question of fact where that determination is clearly erroneous such that the Court has a firm conviction that it is wrong. *In re JTS Corp.*, 617 F.3d at 1109.

Preliminary, it is not clear that a court can reform a contract to bind a different party than the parties bound by the contract's written terms. As noted, reformation can only occur where the party seeking reformation shows that the written contract "fails to express the terms agreed upon *by the parties*." *Isaak*, 623 P.2d at 14 (emphasis added). Here, Appellant seeks to replace Emily Hughes, the party named in the Agreement, with Debtor. Although Appellant claims this case is "a classic law school example of contract reformation," (Doc. 18 at 4–5), Appellant cites no case law to support its position, and the Court's cursory review of the subject illuminates none either. But, that lack of authority makes sense given that reformation is a remedy that effectuates the original intent of the *parties to the written contract*—based on their mutual assent—where there has been a mistake in reducing that intent to writing.

At any rate, even if Appellant is correct that a court can reform a contract to replace one party with another, Appellant still failed to show that Appellant and Debtor mutually assented to an agreement before the Agreement was executed.[2] None of the

---

[2] Interestingly, as noted above, Appellant argues that the bankruptcy court erred by "focus[ing] on the concept of 'parol evidence' to try to decipher the intent of the parties at the time of contract rather than the correct legal principal [sic]: equitable reformation." (Doc. 15 at 11). Appellant continues, "[p]arol evidence is about using extrinsic evidence to explain terms of a written instrument," but here, "[t]he query is not whether external evidence should be used to modify the agreement." (*Id.*). Rather, Appellant asserts the relevant inquiry is "whether the parties made a mutual mistake at the time of execution of the written fee agreement." (*Id.*). As noted, to prevail on a claim for reformation, a party must show that the writing does not reflect the original intent of the parties. Consequently, the Court is hard-pressed to envision a scenario where a court, deciding a reformation claim, would not be required to decipher the intent of the parties at the time the agreement was reduced to writing, just as the bankruptcy court did here. *See* 76 C.J.S. *Reformation of Instruments* § 93 (2020). Although it seems Appellant recognizes that the bankruptcy court had to examine the intent of the parties to determine if there was a

- 4 -

exhibits offered by Appellant during the March 13, 2019 hearing demonstrated that there was any prior agreement between Appellant and Debtor that was erroneously reduced to writing as the Agreement between Appellant and Emily Hughes. In fact, Appellant offered into evidence a bill for legal services, dated one day before Appellant and Emily Hughes executed the Agreement, that listed "Hughes, Emily" as Appellant's client—just like the Agreement. (Doc. 21-3 at 2; Doc. 15-1 at 179–80). And, the Agreement specifically states, "[Appellant's] policy is that the person or business that [Appellant] represent[s] is the person or business identified in [the Agreement] and the scope of our representation does not extend to, or include, any affiliated persons or entities." (Doc. 15-1 at 50). The bill described above (Doc. 21-3 at 2) and the Agreement itself (Doc. 15-1 at 50) suggest, at the time the Agreement was reduced to writing, that both Appellant and Emily Hughes intended to bind Emily Hughes as Appellant's client—not Debtor.

Appellant contends, however, that the bankruptcy court erred because Emily Hughes testified that she intended to seek legal services on behalf of Debtor. (Doc. 15 at 12). According to Appellant, Emily Hughes "signed [the Agreement] erroneously (not knowing the legal distinction between her signing individually and on behalf of her company)." (*See id.* at 12–13).[3] The bankruptcy court determined that Emily Hughes' testimony was not credible because other evidence adduced at the hearing indicated that Emily Hughes "was commercially savvy" and that she knew how to "execut[e] documents on behalf of an entity she may control." (Doc. 15-1 at 118–19; *see* Doc. 15-1 at 195; Doc. 21-4 at 8; Doc. 21-5 at 5, 16, 30; Doc. 21-12 at 5, 9). That determination was

---

mutual mistake in reducing the Agreement to writing, (Doc. 15 at 12–13), Appellant suggests that because the court did just that, it erred. As such, not only does it appear that Appellant misunderstands the concept of reformation, but Appellant's own reasoning illustrates why the bankruptcy court's order was not in error.

[3] It appears, at oral argument, that Appellant changed its position and instead argued that Appellant and Emily Hughes both believed that the Agreement was between only them at the time of the Agreement's execution. If the Court were to consider this argument, it would be dispositive, because, if Appellant and Emily Hughes intended to bind Emily Hughes and not Debtor, then it would be clear that there was no mutual assent between Appellant and Debtor at the time the Agreement was reduced to writing. Such a finding would be fatal to Appellant's attempt to show entitlement to reformation. *SWC Baseline & Crismon Inv'rs, L.L.C.*, 265 P.3d at 1078 ¶ 18.

not clearly erroneous as it is supported by evidence in the record. (*See* Doc. 21-4 at 8; Doc. 21-5 at 5, 16, 30; Doc. 21-12 at 5, 9); *cf. In re Adamson Apparel, Inc.*, 785 F.3d at 1291 (citation omitted); *In re Clark*, 693 F. App'x 644, 645 (9th Cir. 2017) (finding that bankruptcy court did not commit clear error in finding witness testimony not credible because evidence in the record contradicted that testimony); *In re Transact, Inc.*, No. SACV 13-1312-MWF, 2014 WL 3888230, at *28–29 (C.D. Cal. Aug. 6, 2014) (holding bankruptcy court did not commit clear error because evidence in the record supported the court's determination).

The only other evidence Appellant cites as proof of an intent to bind Debtor at the time the Agreement was executed is that the Agreement listed Debtor's address. (Doc. 15 at 11). But, that address could have been listed for a host of other reasons, including simply as a matter of convenience for Emily Hughes, given that Debtor's address was her place of employment. In short, this evidence, even taken with Emily Hughes' testimony, does not establish that the bankruptcy court clearly erred by finding that Appellant and Debtor never mutually assented to any agreement prior to execution of the Agreement.

Appellant has failed to show the bankruptcy court erred in finding that there was no agreement between Appellant and Debtor prior to the execution of the Agreement. The only evidence Appellant points to in support of its claim of error is Emily Hughes' testimony—which the bankruptcy court properly discounted—and the fact that the Agreement lists Debtor's address. In contrast, other evidence in the record plainly supports the bankruptcy court's conclusion. *See In re Adamson Apparel, Inc.*, 785 F.3d at 1291; *In re Transact, Inc.*, 2014 WL 3888230, at *28–29. In light of the record, this Court cannot say it has a strong conviction that the bankruptcy court erred in finding that there was no agreement between Appellant and Debtor that was incorrectly reduced to writing as the Agreement.[4]

---

[4] Appellant offered evidence indicating that Appellant did legal work on behalf of Debtor after the Agreement was signed. (Doc. 15-1 at 181–90). But, as noted, reformation is only available where the court finds an agreement that existed before the written contract was executed that was incorrectly reduced to writing. The key question before the bankruptcy court was whether the Agreement, signed on April 5, 2016, was a contract between Appellant and Debtor or Appellant and Emily Hughes. The Court does not have a strong

Even if Appellant offered more convincing evidence of a prior agreement between Appellant and Debtor, it has not shown that the bankruptcy court was outside its equitable discretion in refusing to reform the contract. Appellant, a sophisticated party, bore the risk of a mistake because it drafted the agreement itself. (Doc. 15-1 at 48–49; *id.* at 222–23); *see, e.g.*, *In re Duong*, 451 B.R. 800, 808 (Bankr. N.D. Ohio 2011). Accordingly, it was within the bankruptcy court's equitable discretion to deny Appellant the remedy of reformation. *See Nelson*, 12 P.3d at 241 ¶ 7; Restatement § 154; Restatement § 155; 7 Corbin, *supra*, § 28.37; 27 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 70:24 (4th ed. 2003).

In sum, based on the evidence adduced at the bankruptcy court hearing, this Court cannot say it has a firm conviction that the bankruptcy court incorrectly determined that there was not a sufficient showing of mutual assent between Appellant and Debtor. And, even if it had, it would be within the court's equitable discretion to deny such relief. As such, the bankruptcy court did not err.

    **b.**    **Ethical Rule 1.5(b)**

Appellant also claims the court erred because it "created a new ethical rule to apply retroactively . . . in bankruptcy matters." (Doc. 15 at 9–10). Not so. The court's application of Ethical Rule 1.5(b) was ancillary to its conclusion that Appellant had no agreement with Debtor. At the hearing, the bankruptcy court simply noted, under its reading of Ethical Rule 1.5(b)[5] and *Levine v. Haralson, Miller, Pitt, Feldman &*

---

conviction that the bankruptcy court erred in finding that there was no mutual assent, and thus, no contract between Appellant and Debtor prior to signing of the Agreement by Appellant and Emily Hughes.

[5] Ethical Rule 1.5(b) provides, in relevant part,

> The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate.

Ariz. Sup. Ct. R. 42, ER 1.5(b).

*McAnally, P.L.C.*, 418 P.3d 1007 (Ariz. Ct. App. 2018),[6] that a fee agreement must be reduced to writing. (Doc. 15-1 at 161–63; *id.* at 115–17). However, the court's application of Ethical Rule 1.5(b) was irrelevant to its analysis because, as discussed above, Appellant has not shown that there was an agreement—written or otherwise—between it and Debtor. In fact, Appellant states that "the written fee agreement was, on its face, written between [Appellant] and Ms. Hughes without reference to [Debtor]." (Doc. 15 at 11). Thus, even if the bankruptcy court's analysis under Ethical Rule 1.5(b) is flawed, the court's application of Ethical Rule 1.5(b) was not material to its decision that there was no contract between Appellant and Debtor.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the bankruptcy court's September 16, 2019 Order is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly pursuant to Federal Rule of Bankruptcy Procedure 8024(a).

Dated this 9th day of March, 2020.

James A. Teilborg
Senior United States District Judge

---

[6] In *Levine*, the Arizona Court of Appeals held that a lawyer could not seek "recovery for the quantum meruit value of legal services he provided pursuant to a non-written contingent fee agreement." 418 P.3d at 1009 ¶ 1. The *Levine* court reasoned that Ethical Rule 1.5(c) requires that a contingent fee agreement be in writing, and thus, recovery for legal services performed on contingency, in the absence of a written agreement, is against public policy and barred. *See id.* at 1010–11 ¶¶ 10–14, 1012 ¶ 19. The bankruptcy court analogized *Levine* and found enforcement of any unwritten fee agreement—contingent or not—would be against public policy under the *Levine* court's reasoning. (Doc. 15-1 at 115–18). Appellant does not argue that it had an unwritten agreement with Debtor or that it is entitled to quantum meruit. (*See id.* at 115–16, 159, 222). Rather, it asserts that the bankruptcy court erred by not reforming the Agreement. (Doc. 15 at 10–13). Consequently, even if Appellant is correct that the court misapplied Ethical Rule 1.5(b), such an error would not entitle Appellant to relief.